ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 22-3074

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

BRENDON SPANN,
*Defendant-Appellant.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BRIEF OF APPELLANT

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

TONY AXAM, JR.
*ISRA JAVED BHATTY
Asst. Federal Public Defenders
*Counsel for Oral Argument
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Tony_Axam@fd.org
Isra_Bhatty@fd.org

District Court
Cr. No. 19-252 (ABJ)

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

TABLE OF AUTHORITIES .................................................................iii

JURISDICTIONAL STATEMENT ........................................................2

CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES ............2

ISSUES PRESENTED FOR REVIEW ..................................................2

STATEMENT OF THE CASE ..............................................................3

    A.   Statement of Facts ................................................................3

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT AND AUTHORITIES ....................................................12

  I.   The district court plainly erred under 18 U.S.C. § 3583(h) when it failed to reduce Mr. Spann's post-revocation supervised release term of 36 months by his 12 month term of incarceration ................................................................12

    A.   Standard of Review ............................................................12

    B.   The district court's 36-month supervised release term exceeded the allowable maximum under 18 U.S.C. § 3583(h)................................................................13

  II.   The district court abused its discretion by impermissibly delegating to the probation officer the authority to require inpatient mental health treatment during Mr. Spann's term of supervised release........................................................16

    A.   Standard of Review ............................................................16

    B.   The district court abused its discretion by impermissibly

delegating judicial authority to the probation officer .......... 18

CONCLUSION ........................................................................ 27

CERTIFICATE OF COMPLIANCE ........................................ 28

# TABLE OF AUTHORITIES

**Cases**

*Ex parte United States*, 242 U.S. 27 (1916) ............................................. 19

*In re Sealed Case*, 573 F.3d 844 (D.C. Cir. 2009) .................................. 12

*United States v. Cooper*, 886 F.3d 146 (D.C. Cir. 2018) .............. 12-13, 15

*United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008) ............................ 12

*United States v. Esparza*, 552 F.3d 1088 (9th Cir. 2009) ........... 20, 21, 23

*United States v. Franklin*, 838 F.3d 564 (5th Cir. 2016) .................... 17-18

*United States v. Hunter*, 786 F.3d 1006 (D.C. Cir. 2015) ....................... 12

*United States v. Hunter*, 809 F.3d 677 (D.C. Cir. 2016) ................... 16, 18

*United States v. Knight*, 580 F.3d 933 (9th Cir. 2009) ........................... 14

*United States v. Martin*, No. 20-13279, 2021 WL 4888206 (11th Cir. Oct. 19, 2021) ................................................................................................. 15

*United States v. Martinez*, 987 F.3d 432 (5th Cir. 2021) .............................................................................................................. ..................................................................... 17-18, 20, 23, 25

*United States v. Matta*, 777 F.3d 116 (2d Cir. 2015) .. 19-20, 21, 23-24, 25

*United States v. Maxwell*, 285 F.3d 336 (4th Cir. 2002) ................... 14, 16

*United States v. Mazarky*, 499 F.3d 1246 (11th Cir. 2007) ............. 13, 14

*United States v. Mike*, 632 F.3d 686 (10th Cir. 2011) ............... 20, 25, 26

*United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022) ... 4, 21-22, 25, 26

*United States v. Price*, 901 F.3d 746 (6th Cir. 2018) .............. 13-14, 15-16

*United States v. Pruden*, 398 F.3d 241 (3d Cir. 2005) ................. 19, 22-23

*United States v. Rodriguez*, 775 F.3d 533 (2d Cir. 2014) ........... 14, 15-16

*United States v. Schopp*, 938 F.3d 1053 (9th Cir. 2019) ......................... 23

*United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005) ............. 18-19, 22

*United States v. Vera*, 542 F.3d 457 (5th Cir. 2008) .............................. 14

*United States v. Williams*, 675 F.3d 275 (3d Cir. 2012) ........................ 14

*United States v. Young*, 910 F.3d 665 (2d Cir. 2018) ............................. 26

*United States v. Zoran*, 682 F.3d 1060 (8th Cir. 2012) .......................... 14

## Statutes

18 U.S.C. § 3583 ......................................... 2-3,9-10, 12, 13-14, 15-16, 18

18 U.S.C. § 3603 ................................................................................. 18

## Additional Authorities

Michael Brodsky, Residential Treatment — When to Consider It, What
        to Look For, 12 *Social Work Today* 8, 8 (2012) .................... 4, 20-21

Nat'l Inst. on Drug Abuse, *Principles of Drug Addiction*
        *Treatment* 33–35 (3d ed. 2012) ....................................... 24

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), defendant-appellant Brendon Spann hereby states as follows:

**A. Parties and Amici:**

This appeal arises from a criminal conviction of defendant-appellant Brendon Spann by plaintiff-appellee, the United States of America. There are no intervenors or *amici*.

**B. Rulings Under Review:**

This is an appeal from the judgment of the district court (the Honorable Amy Berman Jackson) orally pronounced June 30, 2022 and entered on July 15, 2022, revoking Mr. Spann's original term of supervised release and imposing a sentence of 12 months of incarceration and a new term of 36 months of supervised release. App. 96–101. In this appeal, Mr. Spann seeks review of the district court's calculation of the length of his post-revocation term of supervised release and the district court's decision to delegate to the probation officer the authority to require inpatient treatment during Mr. Spann's supervised release.

**C. Related Cases:**

There currently are no related cases. Mr. Spann's case has not previously been before this Court.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. A timely notice of appeal having been filed, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

18 U.S.C. § 3583(h) provides:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

## ISSUES PRESENTED FOR REVIEW

**I.** Whether the 36-month term of supervised release imposed by the district court exceeded the maximum period of supervised release authorized under 18 U.S.C. § 3583(h), which requires that upon

revocation of supervised release any term of imprisonment imposed must be subtracted from the term of supervised release authorized by the statute for the original offense.

**II.** Whether the district court abused its discretion by impermissibly delegating to the probation officer the authority to require inpatient mental health treatment during Appellant's term of supervised release.

## STATEMENT OF THE CASE

### A. Statement of Facts

On February 13, 2020, Defendant Brendon Spann pled guilty to a single count of Cyberstalking in violation of 18 U.S.C. § 2261A(2). App. 23–52.[1] Mr. Spann admitted to stalking and threatening his ex-girlfriend, her family members, and their co-workers via email, texts, phone calls, and mail. App. 36–52.

On August 13, 2020, the District Court (Judge Amy Berman Jackson) sentenced Mr. Spann to 30 months of incarceration, with credit for time served, and supervised release for a term of 36 months. App. 53–60. Among Mr. Spann's supervised release conditions were

---

[1] Citations to the public appendix reference "App.," while citations to the sealed appendix reference "SA."

prohibitions on "creat[ing] or access[ing] fictitious email or social media accounts . . . without prior disclosure of the accounts to the probation officer," and on "us[ing] the internet to threaten, harass, stalk, intimidate, or cyberstalk any person." App. 57. Mr. Spann was required to "disclose all online account information, including usernames and passwords, to the U.S. Probation Office." *Id.* He was also required to "undergo a mental health assessment and participate in a mental health treatment program, which may include a residential[2] program and should include intensive one on one therapy and not simply medication, as directed by the Probation Office." *Id.* The district court specified that "the Probation Office, in consultation with the treatment professional, will monitor and supervise defendant's participation in treatment." *Id.*

Mr. Spann was released from incarceration on October 5, 2021. App. 61. On March 2, 2022, the United States Probation Office filed a

---

[2] "Both mental-health and substance-abuse treatment can be provided in a variety of settings—including inpatient, residential, and outpatient—depending on the severity of a patient's condition and the patient's needs." *United States v. Nishida*, 53 F.4th 1144, 1152 (9th Cir. 2022). "Generally speaking, patients enter residential treatment in acute or subacute crisis situations during which their needs are too intense to be managed with outpatient treatment but which do not rise to the level of severity requiring inpatient treatment." Michael Brodsky, Residential Treatment — When to Consider It, What to Look For, 12 *Social Work Today* 8, 8 (2012).

probation memorandum noting that "Mr. Spann was attempting to cyber stalk and send repeated unwanted communication via social media." App. 62. The Probation Office did not recommend revocation but requested a hearing on violation. App. 63. On March 7, 2022, the district court modified Mr. Spann's conditions of release to include additional restrictions on accessing the internet. App. 170 –171. On April 12, 2022, the district court again modified Mr. Spann's conditions of release, ordering Mr. Spann to (1) "notify his potential employer of the need to install computer monitoring software on any work-issued computer, and to provide the Probation Office with his work-issued computer or computers forthwith so that the monitoring software may be installed before he begins employment"; (2) "identify and provide all of his computers to the Probation Office for monitoring purposes"; and (3) refrain from using "WhatsApp or any other encrypting program or application on any computer." App. at 12; 201–209.

On April 22, 2022, the government moved to revoke Mr. Spann's supervised release and sentence him to additional incarceration of a period between 3 and 9 months. App. at 69. On April 26, 2022, the district court held a hearing, taking the government's motion under

advisement and modifying Mr. Spann's conditions of release to include restrictions on obtaining employment without prior approval of the probation officer. App. 84–86. The court also clarified that Mr. Spann may not use any computer or device capable of connecting to the internet unless that device is disclosed to probation. *Id.*

Following the Government's second motion to revoke supervised release, which cited instances of Mr. Spann's tweeting to or about a prior victim's contacts, the Probation Office filed a petition noting that Mr. Spann had sent multiple unwanted communications via Twitter in violation of his special conditions. SA3; App. 88. The Probation Office recommended a hearing on violation, but did not recommend revocation. App. 89. At the request of the district court, the Probation Office submitted an additional memorandum discussing the alleged violations in the government's second motion to revoke, and determining that the violations were all "similar in nature" and did not warrant an increase in the grade of violation. App. 95. The probation memorandum noted that Mr. Spann was allegedly in violation of his supervision but did not recommend revocation. App. 94–95.

The district court held a hearing on revocation on June 30, 2022. At that hearing, the district court revoked Mr. Spann's term of supervised release, determining that Mr. Spann had violated the following two conditions:

1) The defendant must not use the internet to threaten, harass, stalk, intimidate, or cyberstalk any person, including the victims in this case with whom he may not communicate at all. But this restriction rule is not limited to them; the defendant may not use the internet to harass, stalk, intimidate, or cyberstalk - or to send repeated unwanted communications - to anyone.
2) The defendant shall disclose all online account information, including user names and passwords, to the U.S. Probation Office.

App. 97. The district court sentenced Mr. Spann to 12 months of incarceration and 36 months of supervised release. App. 98–99. At the hearing, the court noted a "strong mental health component" to Mr. Spann's conduct and offered its "strongest possible recommendation that [the Bureau of Prisons] designate a facility with sophisticated resources for mental health treatment, such as . . . Butner, North Carolina," where Mr. Spann is presently incarcerated. App. 247, 254. The district court reimposed the conditions of Mr. Spann's original term of supervised release and added:

> It is a condition of your supervised release that immediately
> upon your release you will be subject to a 30-day inpatient
> mental health assessment at a facility to be designated at the
> discretion of the probation office. That could be Sheppard Pratt,
> that could be somewhere else that the probation office
> determines is appropriate.

App. 254. The district court then stated that Mr. Spann would continue

to be required to receive mental health treatment during supervised

release:

> It is also a condition of your supervised release, as it was
> before, that you obtain mental health treatment. That will
> continue to be under the supervision of the probation office.
> Based on recommendations that arose out of that assessment,
> if it's deemed appropriate to continue on an inpatient basis at
> Sheppard Pratt, that's fine with me. If it's determined that it's
> appropriate to go back to the Pascal Youth and Family
> Services for the intensive outpatient therapy that you've
> identified, that's fine with me, too. But that will not begin
> until after you've been incarcerated and you're released and
> you've had the inpatient assessment.

App. 253–254.

During the revocation hearing, Mr. Spann did not object to the

length of his post-revocation supervised release term or to his new

conditions for mental health treatment post-incarceration.

Mr. Spann's Judgment on Revocation, dated July 15, 2022, stated

the following with respect to mental health treatment:

In Patient Mental Health Assessment - It is a condition of defendant's supervised release that immediately upon his release he will be subject to a 30-day inpatient mental health assessment at a facility to be designated at the discretion of the United States Probation Office. That facility could be Sheppard Pratt, or it could be somewhere else that the United States Probation Office determines is appropriate. To the extent that the defendant has insurance coverage that would help pay for this, the defendant has to contribute to the cost of this assessment and inpatient service.

Mental Health Treatment - It will be a condition of the defendant's supervised release, as it was before, that he obtain mental health treatment. This treatment will continue under the supervision of the United States Probation Office. Based on the recommendations that arise out of the mental health assessment, if it's deemed appropriate to continue on an inpatient basis at Sheppard Pratt, or at the Pascal Youth and Family Services for the intensive outpatient therapy identified by the defendant, either of those facilities would satisfy the Court. But such services will not begin until after the defendant's release from incarceration and he has had the inpatient assessment.

App. 101.

On August 12, 2022, Mr. Spann filed a motion for resentencing, requesting six months of incarceration and six months of inpatient mental health treatment, which the district court denied in a hearing held on September 23, 2022. SA24. At that hearing, Mr. Spann noted "for the record" that he objected to the length of the term of post-revocation supervised release as exceeding the statutory maximum

under 18 U.S.C. § 3583(h). App. 297. The district court responded that Mr. Spann's objection was not raised during the revocation sentencing. *Id.*

On October 5, 2022, Mr. Spann filed a timely notice of appeal. App. 105.

## SUMMARY OF ARGUMENT

The district court committed two errors when it imposed Mr. Spann's sentence on revocation. First, the district court plainly erred in imposing a 36-month term of supervised release that exceeded the maximum period of supervised release authorized under 18 U.S.C. § 3583(h). That statute requires that upon revocation, any term of imprisonment imposed on revocation must be subtracted from the maximum term of supervised release allowed by the statute for the original offense. Since the maximum supervised release term authorized by the statute of Mr. Spann's conviction is 36 months and the district court imposed 12 months of incarceration upon revocation, the district court could not impose a term of supervised release longer than 24 months. The district court's above-maximum supervised release term was therefore plain error.

Second, the district court abused its discretion by impermissibly delegating to the probation officer the authority to require inpatient mental health treatment during Mr. Spann's term of supervised release. By allowing the supervising probation officer to decide whether to impose inpatient or outpatient treatment, both of which were essentially pre-approved by the court as part of Mr. Spann's mental health treatment condition of supervised release, the district court failed to appreciate the significant liberty interests at stake in the imposition of inpatient treatment. As several circuits have held, given its highly restrictive nature, inpatient treatment may only be imposed by the district court and should be supported by particularized findings that such treatment does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing. The mental health treatment condition imposed by the district court places Mr. Spann's liberty or loss of liberty at the discretion of the probation officer, thereby allowing the probation officer to decide the nature and extent of Mr. Spann's punishment. That is an impermissible delegation of judicial sentencing authority that must be corrected upon remand.

## ARGUMENT AND AUTHORITIES

**I. The district court plainly erred under 18 U.S.C. § 3583(h) when it failed to reduce Mr. Spann's post-revocation supervised release term of 36 months by his 12 month term of incarceration.**

### A. Standard of Review

This Court reviews purely legal questions *de novo*. *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008). The district court's interpretation of statutes governing Mr. Spann's sentence on revocation is a legal conclusion that this Court reviews *de novo*. *Id.*

Where the defendant's trial counsel failed to object at sentencing, this Court reviews the defendant's sentencing claim for plain error. *United States v. Hunter*, 786 F.3d 1006, 1010 (D.C. Cir. 2015). Under the plain-error standard, "defendant must show that the error occurred, that it was 'plain,' and that it affected his substantial rights. If these three elements are met," the Court reverses only if "the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *In re Sealed Case*, 573 F.3d 844, 847 (D.C. Cir. 2009) (internal citations omitted). A sentence that exceeds the statutory maximum is an illegal sentence that amounts to plain error. *United States v. Cooper*, 886 F.3d

146, 158 (D.C. Cir. 2018) ("Because it is a miscarriage of justice to give a person an illegal sentence . . . just as it is to convict an innocent person, the above-maximum sentences amounted to plain error.") (internal quotation marks omitted).

## B. The district court's 36-month supervised release term exceeded the allowable maximum under 18 U.S.C. § 3583(h).

18 U.S.C. § 3583(h) governs the district court's authority to set a new term of supervised release following revocation of a defendant's supervised release. Per the text of the statute, the length of a term of supervised release imposed on revocation "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). That unambiguous language is susceptible to only one reasonable interpretation—that the maximum allowable supervised release term upon revocation "must be reduced" by any terms of imprisonment that have been imposed upon revocation. *United States v. Mazarky*, 499 F.3d 1246, 1250 (11th Cir. 2007). Every circuit to address the issue has agreed. *See, e.g., United States v. Price*, 901 F.3d 746, 750

(6th Cir. 2018) (holding that because Section 3583(h) has "only one reasonable interpretation . . . the error in calculating the maximum term of supervised release was and is both obvious and not subject to reasonable dispute"); *accord United States v. Rodriguez*, 775 F.3d 533, 537 (2d Cir. 2014); *United States v. Zoran*, 682 F.3d 1060, 1064 (8th Cir. 2012); *United States v. Williams*, 675 F.3d 275, 279 (3d Cir. 2012) (noting that "the authorized term of a supervised release tail progressively diminishes by the length of successive terms of post-revocation imprisonment"); *United States v. Knight*, 580 F.3d 933, 940 (9th Cir. 2009); *United States v. Vera*, 542 F.3d 457, 460 (5th Cir. 2008); *United States v. Mazarky*, 499 F.3d 1246, 1250 (11th Cir. 2007); *United States v. Maxwell*, 285 F.3d 336, 341 (4th Cir. 2002) (concluding that failing to reduce the authorized term of supervised release by the terms of imprisonment imposed on revocation "would permit a district court . . . to sentence a defendant to a term of supervised release unrelated to the original offense," since "the defendant could be sentenced to a term of supervised release that exceeded the statutory maximum term of supervised release authorized for the original offense").

Simple math reveals the proper calculation under 18 U.S.C. § 3583(h):

- "[T]he term of supervised release authorized by statute for the offense that resulted in the original term of supervised release" = 36 months.  18 U.S.C. § 3583(b) (setting a maximum of 36 months for a class C felony); App. 62.
- "[A]ny term of imprisonment that was imposed upon revocation of supervised release" = 12 months
- 36 months – 12 months = 24 months.

Thus, Mr. Spann's term of supervised release should not have exceeded 24 months.

It is also well-settled that the imposition of a supervised release term longer than allowable by statute is plain error, as "it is a miscarriage of justice to give a person an illegal sentence."  *Cooper*, 886 F.3d at 158. The district court's obvious error under Section 3583(h)'s plain terms thus affected Mr. Spann's substantial rights and the fairness, integrity, and public reputation of his proceedings.  *See id.*; *see also United States v. Martin*, No. 20-13279, 2021 WL 4888206, at *1 (11th Cir. Oct. 19, 2021) (vacating supervised release sentence exceeding allowable limits under Section 3583(h) as plain error "because the statute's terms are plain"); *Price*, 901 F.3d at 751 (finding that "obvious error resulted in the imposition of a term of supervised release that exceeded the

maximum permitted under § 3583(h)" and therefore affected defendant's substantial rights and "the fairness, integrity, or public reputation of the judicial proceedings"); *accord Rodriguez*, 775 F.3d at 536–37 (finding plain error); *Maxwell*, 285 F.3d at 342 (same). Mr. Spann has established plain error that must be corrected on remand.

## II. The district court abused its discretion by impermissibly delegating to the probation officer the authority to require inpatient mental health treatment during Mr. Spann's term of supervised release.

### A. Standard of Review

Where the defendant had no meaningful opportunity to object to the conditions of supervised release during sentencing, this Court reviews for abuse of discretion. *United States v. Hunter*, 809 F.3d 677, 683 (D.C. Cir. 2016) (requiring "a fair opportunity to register an objection" during sentencing). Mr. Spann had no opportunity to object to the Court's mental health treatment condition because the district court's oral pronouncement of that condition failed to make clear whether the court, probation, or some other entity was deciding the nature of Mr. Spann's treatment and to what extent "inpatient" treatment was a possibility. On the one hand, the district court stated that Mr. Spann's

mental health treatment condition was "as it was before" revocation, when inpatient mental health treatment—with all of its restrictions on Mr. Spann's liberty—was not contemplated by the court. App. 254; *see* App. 57, 152 (mentioning only "residential" treatment as a treatment option); *see also supra* fn. 2 (describing difference between inpatient, outpatient, and residential treatment). On the other hand, the district court stated to Mr. Spann that he would be under the "supervision" of his probation officer and that both "inpatient" and "outpatient" options for treatment were "fine." App. 254–55. It was not until its written judgment that the district court clarified that the Probation Office would be determining whether to proceed with "inpatient" or "outpatient" treatment following Mr. Spann's 30-day assessment by stating that either option, made under probation's "supervision," would "satisfy the Court." App. 101. Because "the district court's oral statements at the sentencing hearing did not mention or define the discretion the court would give to the probation officer to choose between inpatient and outpatient treatment," Mr. Spann lacked a fair opportunity to object to his mental health treatment condition. *United States v. Martinez*, 987 F.3d 432, 435 (5th Cir. 2021); *see also United States v. Franklin*, 838 F.3d

564, 567 (5th Cir. 2016) (finding no opportunity to object where oral pronouncement did not define probation's role in mental health treatment). This Court should therefore review the district court's delegation decision for abuse of discretion. *Hunter*, 809 F.3d at 683.

## B. The district court abused its discretion by impermissibly delegating judicial authority to the probation officer.

The statute governing conditions of post-revocation supervised release, 18 U.S.C. § 3583(d), articulates the bounds of the district court's sentencing authority at revocation. To complement this authority, "Congress has given probation officers broad statutory authority to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation." *United States v. Stephens*, 424 F.3d 876, 880 (9th Cir. 2005) (citing 18 U.S.C. § 3603). But this authority is not without limit. Indeed, courts that have dealt with the bounds of the "division of labor" between the district court and the probation office as it concerns treatment-related conditions of supervised release have uniformly found that while the district court determines whether a defendant must abide by a condition, the court may delegate to the probation officer "the details of where and when the condition will

be satisfied." *Stephens*, 424 F.3d at 880. Most importantly, a non-judicial officer "'may not decide the nature or extent of the punishment imposed upon a probationer,'" *id.* at 881 (quoting *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005)), because "[u]nder our constitutional system the right to . . . impose the punishment provided by law is judicial," *id.* (citing *Ex parte United States*, 242 U.S. 27, 41–42, (1916)).

Here, under Mr. Spann's mental health treatment condition, the district court made it clear that it was not retaining authority to decide whether Mr. Spann would receive "inpatient" or "outpatient" treatment. That decision—the difference between his "liberty and loss of liberty"— was instead delegated by the court to the supervising probation officer. *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015). Both inpatient and outpatient treatment options were essentially pre-approved by the court if "deemed appropriate" by probation. App. 254–55 (describing both inpatient and outpatient treatments as "fine"); *see also* App. 101 (noting both inpatient and outpatient treatments, as "deemed appropriate" by probation, would "satisfy the Court"). Mr. Spann's mental health treatment condition thus makes his liberty contingent upon the probation officer's exercise of discretion, which is "tantamount to

allowing [the probation officer] to decide the nature or extent of [his] punishment." *Matta*, 777 F.3d at 123. That is an impermissible delegation of judicial sentencing authority.

The opinions of the Second, Fifth, Ninth, and Tenth Circuits, which have considered this issue in precedential opinions, are instructive in understanding why inpatient treatment is "qualitatively different" from other types of treatment that do not "touch on significant liberty interests," and why the decision to impose such treatment "must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *United States v. Mike*, 632 F.3d 686, 695–96 (10th Cir. 2011); *see also Martinez*, 987 F.3d at 435; *United States v. Matta*, 777 F.3d 116, 122–23 (2d Cir. 2015); *United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009). "Inpatient treatment differs from outpatient treatment because the patient cannot leave; the patient must remain at the hospital or facility day and night throughout the duration of the treatment." *Martinez*, 987 F.3d at 435 (citing *Matta*, 777 F.3d at 122). Given its highly restrictive nature, inpatient treatment is typically reserved for the most severe cases of

psychiatric illness manifesting in "acute danger to self or others or the grave inability to provide adequate self-care." Brodsky, 12 *Social Work Today* at 8. Inpatient treatment is "sufficiently more restrictive than outpatient programs that the difference between the two programs might be said to be the difference between liberty and the loss of liberty." *Matta* 777 F.3d at 122; *see also Esparza*, 552 F.3d at 1091 (noting that "confinement to a mental health facility is far more restrictive than having to attend therapy sessions, even daily"—a "conclusion . . . bolstered by Congress' recognition of procedural and substantive protections that apply to civil commitment to inpatient facilities") (citing 18 U.S.C. § 4248).

Recently, *United States v. Nishida*, the Ninth Circuit dealt with a substantially similar circumstance: a condition of supervised release that "direct[ed] the probation officer, after consulting with the provider, to supervise [the defendant's] treatment, including the 'provider, location, modality, duration, and intensity.'" 53 F.4th 1144, 1152 (9th Cir. 2022). The Ninth Circuit read the "the breadth of the probation officer's discretion, in consultation with the treatment provider" to include choosing between "inpatient, residential, and outpatient" treatment,

ranging "from periodic outpatient visits to full-time involuntary care," and thereby implicating "the nature or extent of the punishment." *Id.* Although the Ninth Circuit observed that it was not clear whether "the district court intended to give the probation officer such broad discretion to require [the defendant] to attend inpatient treatment," the district court's articulation of the condition "gave no indication that it was retaining this authority." *Id.* This "beg[ged] the question—if the probation officer does not have the authority to select the type of treatment that [the defendant] must complete, who does?"

The Ninth Circuit observed, moreover, that if the district court had "intended that the treatment professional would decide whether inpatient or outpatient treatment would be required, the same improper-delegation problem would exist." *Id.* (citing *Stephens*, 424 F.3d at 881 ("[T]he right to . . . impose the punishment provided by law is judicial.")). Because the condition affected the defendant's substantial rights, in that she was required to "comply with the conditions or face revocation of her supervised release," the Ninth Circuit found that the condition was plain error. *Id.* (citing *United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005) ("A plainly erroneous condition of supervised release will inevitably affect

substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration."); *United States v. Schopp*, 938 F.3d 1053, 1069 (9th Cir. 2019) ("[I]t is a miscarriage of justice to give a person an illegal sentence.")); *see also Esparza*, 552 F.3d 1088 (9th Cir. 2009) (holding that a supervised-release condition requiring the defendant to participate in a counseling or sex offender treatment program "which may include inpatient treatment, as approved and directed by the Probation Officer" was impermissible delegation of judicial sentencing authority, and remanding the case with instructions to strike from the condition the phrase "which may include inpatient treatment.").

Similarly, in *Martinez*, the Fifth Circuit found that the significant restrictions imposed by inpatient treatment—particularly that the "patient cannot leave"—coupled with the defendant's "short ten month sentence," meant that "the district court should not have delegated the decision to further restrict a defendant's liberty during the course of treatment while on supervised release." 987 F.3d 432, 436 (5th Cir. 2021). Likewise, in *Matta*, the Second Circuit found that a supervised-release condition requiring the defendant to "participate in an outpatient and/or inpatient drug treatment or detoxification program approved by

the U.S. Probation Department" impermissibly delegated judicial sentencing authority to the probation officer, who could decide whether the defendant should undergo inpatient or outpatient drug treatment as a condition of supervised release. *Matta*, 777 F.3d at 121. The Second Circuit reasoned:

> [I]n the context of supervised release at least, inpatient drug treatment programs are sufficiently more restrictive than outpatient programs that the difference between the two programs might be said to be the difference between liberty and the loss of liberty. In inpatient drug treatment, the offender can remain at a designated facility 24 hours each day for several months, unable to hold a job or regularly commune with friends and family. In outpatient drug treatment, by contrast, the same offender can reside at home and hold a job.

*Id.* at 122 (citing Nat'l Inst. on Drug Abuse, *Principles of Drug Addiction Treatment* 33–35 (3d ed. 2012)). Thus, recognizing the "significant liberty interest" at stake, the Second Circuit in *Matta* made clear that inpatient treatment cannot be imposed by a probation officer in his or her supervisory capacity, but must instead be "imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Id.* at 123.

The Tenth Circuit in *Mike* likewise recognized that "any condition that affects a significant liberty interest, such as one requiring the defendant to participate in residential treatment . . . must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Mike*, 632 F.3d at 695–96. Because the supervised release condition in *Mike* did not explicitly state that the probation officer had the discretion to force the defendant to participate in inpatient treatment (though "due to its open-ended language, the condition could be read to delegate such discretion"), the Tenth Circuit elected to construe the challenged condition as not delegating this authority to the probation officer. *See id.*

Here, as in *Martinez*, *Nishida*, and *Matta*, Mr. Spann's mental health treatment condition impermissibly delegates judicial sentencing authority to the probation officer, as it makes Mr. Spann's liberty contingent upon the probation officer's exercise of discretion in choosing whether Mr. Spann should receive inpatient or outpatient treatment. The mental health treatment condition is accompanied by no specification that inpatient treatment will be imposed by the district

court following Mr. Spann's 30-day assessment if the district court finds that such treatment is actually needed by Mr. Spann and does not unduly deprive him of his liberty. Indeed, as in *Nishida*, the district court's language communicates that it is the probation officer, following the 30-day assessment, who will make this determination. *See* App. 254–55; *see also* App. 101 (noting both inpatient and outpatient treatments, as "deemed appropriate" by probation, would "satisfy the Court"). No other reading of the district court's pronouncement is possible.

Given the significant liberty interest at stake in imposing inpatient treatment, this Court should make clear that such treatment may only be imposed by the district court and that "[t]o mandate inpatient treatment, a district court must make particularized findings that such a course of treatment does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *United States v. Young*, 910 F.3d 665, 675 (2d Cir. 2018); *see also Mike*, 632 F.3d at 696. In this case, as the district court suggested, this determination would take place following Mr. Spann's 30-day assessment, but it must only be made by the district court itself, not a probation officer.

## CONCLUSION

For the foregoing reasons, Mr. Spann respectfully requests that this Court vacate his 36-month term of supervised release as well as the mental health condition as presently constructed. This Court should remand this matter to the district court with instructions that Mr. Spann's term of supervised release shall not exceed 24 months, that inpatient treatment may only be imposed by the district court, and that an inpatient treatment requirement must be supported by the district court's particularized findings that such treatment does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of supervised release.

Respectfully submitted,

A. J. Kramer
Federal Public Defender

_____/s/_____
Tony Axam, Jr.
Isra Javed Bhatty
Assistant Federal Public Defenders
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Tony_Axam@fd.org
Isra_Bhatty@fd.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Opening Brief was prepared in Century Schoolhouse 14-point font pursuant to Fed. R. App. P. 27(d)(2) and contains 5,385 words.

<u>          /s/                   </u>
Tony Axam, Jr.
Isra Javed Bhatty
Assistant Federal Public Defenders