ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 22-3074

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

BRENDON SPANN,
*Defendant-Appellant.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

REPLY BRIEF FOR APPELLANT

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

ISRA BHATTY
Asst. Federal Public Defender
625 Indiana Avenue, NW, Suite 550
Washington, DC 20004
(202) 208-7500
Isra_Bhatty@fd.org

District Court
Cr. No. 19-252 (ABJ)

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................ 1

ARGUMENT AND AUTHORITIES ......................................................... 3

I.  Because Mr. Spann Did Not Have an Opportunity
    to Object to his Mental Health Supervision Condition
    at Sentencing, Abuse of Discretion is the Appropriate
    Standard of Review ....................................................................... 3

    A.  Mr. Spann Had No Opportunity to Object to the
        Mental Health Supervision Condition at His
        Sentencing ............................................................................. 3

    B.  Because the September 23, 2022 Hearing Took
        Place While this Court had Jurisdiction Over
        Spann's Appeal, Any Objection at That Hearing
        Would Have Been Meaningless ............................................. 7

II. The District Court Abused Its Discretion By Delegating
    to the Probation Officer the Decision of Whether
    to Impose Inpatient Treatment as a Condition of
    Supervised Release .................................................................... 10

    A.  The Mental Health Supervision Condition
        Impermissibly Leaves It to the Probation Office
        to Determine Whether Mr. Spann Will Be Subject
        to Inpatient Treatment ......................................................... 11

    B.  The Government Ignores the Significant Implications
        of the District Court's Delegation of the Inpatient
        Treatment Decision to Probation ......................................... 15

III. Even Under a Plain Error Standard, the District
     Court's Delegation to the Probation Officer
     Was Impermissible .................................................................... 19

CONCLUSION ........................................................... 26

CERTIFICATE OF COMPLIANCE ....................................... 28

# TABLE OF AUTHORITIES

## Cases

*Ex parte United States*, 242 U.S. 27 (1916) ...................................... 19-20

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ......... 8, 9

*In re Sealed Case*, 573 F.3d 844 (D.C. Cir. 2009) ........................ 19, 25-26

*Kusay v. United States*, 62 F.3d 192 (7th Cir. 1995) ........................... 8, 9

*United States v. Accardi*, 669 F.3d 340 (D.C. Cir. 2012) ........................ 20

*United States v. Allen*, 312 F.3d 512 (1st Cir. 2002) ................... 20, 22-23

*United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010) ............. 24, 25

*United States v. Byrd*, 808 F. App'x 161 (4th Cir. 2020) ................... 22-23

*United States v. Calnan*, 194 F. App'x 868 (11th Cir. 2006) ................ 22

*United States v. Carpenter*, 702 F.3d 882 (6th Cir. 2012) ................ 22-23

*United States v. Cooper*, 886 F.3d 146 (D.C. Cir. 2018) ........................ 26

*United States v. Cutler*, 259 F. App'x 883 (7th Cir. 2008) ................ 21-22

*United States v. D'Amario*, 412 F.3d 253 (1st Cir. 2005) ........................ 9

*United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) ........................ 8

*United States v. Franklin*, 838 F.3d 564 (5th Cir. 2016) ......................... 6

*United States v. Head*, 817 F.3d 354 (D.C. Cir. 2016) ........................... 26

*United States v. Heckman*, 592 F.3d 400 (3d Cir. 2010) ............. 20, 22-23

*United States v. Kent*, 209 F.3d 1073 (8th Cir. 2000) ...................... 14, 21

*United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013) ...................... 24

*United States v. Martinez*, 987 F.3d 432 (5th Cir. 2021)............... 4, 6, 12

*United States v. Matta*, 777 F.3d 116 (2d Cir. 2015) ......... 4, 5, 6-7, 14, 18

*United States v. Medina*, 845 F. App'x 353 (5th Cir. 2021) ..................... 6

*United States v. Mike*, 632 F.3d 686 (10th Cir. 2011) ...................... 11-13

*United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022)...........................
.............................................................. 12, 13, 15, 20, 22, 25

*United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001) ........................... 11

*United States v. Poitra*, 648 F.3d 884 (8th Cir. 2011) ........................... 21

*United States v. Pruden*, 398 F.3d 241 (3d Cir. 2005) ............... 22, 25, 26

*United States v. Ray*, 831 F.3d 431 (7th Cir. 2016) ............................... 10

*United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005)....... 11, 13, 19-20

*United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015)................ 18-19

*United States v. Wynn*, 553 F.3d 1114 (8th Cir. 2009) ........................... 21

*United States v. Young*, 910 F.3d 665 (2d Cir. 2018)............................. 14

## Statutes and Rules

18 U.S.C. § 3553 ..................................................................... 16

18 U.S.C. § 3583 ................................................................ 16, 25

Fed. R. Crim. P. 32.1 ............................................................... 25

## SUMMARY OF ARGUMENT

The government agrees with Mr. Spann that the district court plainly erred by imposing a term of supervised release of 36 months to follow his term of imprisonment after revocation. On that issue, this Court should remand for the district court to impose a term of supervised release no longer than 24 months.

The district court also erred by impermissibly delegating to the Probation Office the authority to require inpatient mental health treatment during Mr. Spann's term of supervised release. This court should review this delegation under an abuse of discretion standard because the court's explanation of the condition at sentencing was so vague that it did not provide sufficient notice to Mr. Spann that the Probation Office would unilaterally decide whether he would be confined to inpatient or outpatient for treatment. The modification hearing that the government claims provided clarity has no relevance to this issue since it post-dated Mr. Spann's notice ofappeal.

Even under the plain error standard of review the government urges, the court's delegation of mental health supervision cannot survive. Only a district court may decide which supervised release conditions are

appropriate and the least restrictive for a defendant, weighing various factors to promote the statutory purposes of supervised release. And inpatient treatment presents significant restrictions on a defendant's liberty that must be considered by a judicial officer because deciding whether to impose such restrictions well exceeds the ministerial duties suitable for the Probation Office to consider. The government ignores these considerations and instead characterizes the possibility of inpatient treatment as a "contingent" condition pre-approved by the district court. But there is no reworking language in Mr. Spann's judgment that grants the Probation Office unilateral authority to decide whether to impose inpatient treatment with all of its attendant restrictions on Mr. Spann's liberty. Because inpatient mental health treatment necessarily implicates a fundamental liberty interest, its imposition inevitably affects Mr. Spann's substantial rights and indeed, the fairness of the sentencing process in this case as a whole. As a result, the condition does not survive plain error review.

# ARGUMENT AND AUTHORITIES

I. **Because Mr. Spann Did Not Have an Opportunity to Object to His Mental Health Supervision Condition at Sentencing, Abuse of Discretion is the Appropriate Standard of Review.**

The government argues that Mr. Spann's mental health supervision condition should be reviewed for plain error because Mr. Spann did not object to the condition before the district court. But Spann had no opportunity to do so at sentencing because the district court did not make clear in its oral pronouncement that the Probation Office was deciding whether Mr. Spann would be required to participate in inpatient mental health treatment during supervision. An abuse of discretion standard of review is therefore warranted.

A. **Mr. Spann Had No Opportunity to Object to the Mental Health Supervision Condition at His Sentencing.**

As Mr. Spann argued in his opening brief, he lacked an opportunity to object to the district court's delegation of authority to decide whether he would be subject to inpatient mental health treatment during supervision. Primarily, the district court's oral pronouncement was so vague as to fail to provide notice that the court was delegating to the

Probation Office the decision of whether Mr. Spann would be subject to inpatient or outpatient mental health treatment during supervision.

The government ignores the court's use of passive language: "Based on recommendations that arose out of that assessment, *if it's deemed appropriate* to continue on an inpatient basis at Sheppard Pratt, that's fine with me." App. 253. This statement left a logical impression that the court would itself assess whether inpatient mental health treatment would be appropriate, taking into account the results of the 30-day assessment. At sentencing, the district court "did not mention or define the discretion the court would give to the probation officer to choose between inpatient and outpatient treatment." *United States v. Martinez*, 987 F.3d 432, 435 (5th Cir. 2021). The vague language the district court used in its oral pronouncement could not have put Mr. Spann on notice that he should have objected to an impermissible delegation of authority. *United States v. Matta*, 777 F.3d 116, 121–22 (2d Cir. 2015) (concluding that defendant "did not have a sufficient opportunity to raise a contemporaneous objection to the challenged delegation" because district court did not "warn [defendant] of the possibility [of delegating the treatment decision to the Probation Office] before imposing sentence").

The government argues that the oral pronouncement's language was essentially identical to what appeared in the written judgement. Gov't Br. at 20. Not so. In the written judgment, the Court referred to itself in the third person ("would satisfy the Court"). When paired with the passive tense ("if it's deemed"), and reference to the Probation Office's supervision in the prior sentence, the judgment was the first clear indication of a delegation problem. Courts dealing with similar situations have found the written condition clear enough to assess the permissibility of the delegation without faulting the defendant for failing to identify the delegation problem in the oral pronouncement. *See, e.g.*, *United States v. Matta*, 777 F.3d 116, 121 (2d Cir. 2015) (finding impermissible delegation where judgment required defendant to "participate in an outpatient and/or inpatient drug treatment or detoxification program approved by the U.S. Probation Department" but excusing defendant's failure to object to oral pronouncement that left it "'to the discretion of Probation' to decide whether an inpatient or outpatient program was 'most appropriate.'").

Critically, the government does not argue that the oral pronouncement in itself was clear enough to notify Mr. Spann that the

Probation Office would decide whether he would be confined inpatient or be permitted to participate in outpatient treatment. Because the district court's oral articulation of the supervision treatment condition was so vague that Mr. Spann could not discern that the district court was delegating the inpatient treatment decision to the Probation Office, he essentially had no opportunity to object. *See United States v. Martinez*, 987 F.3d 432, 435 (5th Cir. 2021) (finding no opportunity to object where oral pronouncement did not define Probation Office's role in mental health treatment); *United States v. Franklin*, 838 F.3d 564, 567 (5th Cir. 2016) (same); *Matta*, 777 F.3d at 121 (same). At the very least, the language the district court used at sentencing was so unclear that it did not signify an improper delegation and "out of an abundance of caution," this Court should review the effect of that language for an abuse of discretion. *United States v. Medina*, 845 F. App'x 353, 354 (5th Cir. 2021) (Where it is "unclear whether the defendant had an opportunity to object to a [special condition of supervised release] during sentencing," this court should out of "an abundance of caution" review the condition for an abuse of discretion) (internal quotation marks omitted); *see also Matta*, 777 F.3d at 121 ("employing a 'relaxed' form of

plain error review [where] defendant lacked sufficient prior notice that a particular condition of supervised release might be imposed").

## B. Because the September 23, 2022 Hearing Took Place While this Court had Jurisdiction Over Spann's Appeal, Any Objection at That Hearing Would Have Been Meaningless.

The government argues that the September 23rd hearing settles the question of the proper standard of review because the hearing provided a clear opportunity for Mr. Spann to lodge his objections to the mental health supervision condition. Gov't Br. 20. Not so. First, that hearing, styled as a hearing to modify conditions of supervised release, could not have had a legal effect on a sentence from which an appeal had already been noted. As the government recognizes, this Court has jurisdiction to hear this appeal because on August 12, 2022,[1] Mr. Spann filed a pro se letter requesting review of his sentence, including his terms of imprisonment and mental health treatment. SA24–25. The district court treated that letter as a timely notice of appeal. App. 280. Once that notice was filed, jurisdiction was conferred to this Court and the district

---

[1] Mr. Spann's letter was dated July 25, 2022, but was docketed on August 12, 2022. His opening brief incorrectly stated the date of Mr. Spann's timely notice of appeal as October 5. 2022. (App. Br. at 10).

court no longer had jurisdiction to decide an issue related to the sentence it had imposed. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (per curiam) (holding that upon the conferring of jurisdiction to the Court of Appeals, "[t]he district court does not regain jurisdiction over those matters until the court of appeals issues its mandate.")

The district court's September 23, 2022 hearing, was therefore a legal "nullity." *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995) ("Until the mandate issues, the case is 'in' the court of appeals, and any action by the district court is a nullity."). The district court was powerless to make any changes to the sentence that Mr. Spann had already appealed, including its supervised release conditions. Thus, any objections Mr. Spann could have raised on September 23rd could not possibly now be dispositive as to the standard of review to be applied in the immediate appeal.

The government nevertheless argues that the district court somehow retained jurisdiction to modify Mr. Spann's supervised release conditions because "[o]ngoing supervision of release conditions is separate from the 'aspects of the case involved in the appeal.'" Gov't Br. 15 (quoting *Griggs*, 459 U.S. at 58). But Mr. Spann's appeal centers precisely on his supervision conditions. While those conditions are "'in' the court of appeals," the district court lacks jurisdiction to change them. *Kusay*, 62 F.3d at 194.

The government further argues that "'common sense'" suggests that a district court must be able to continue to supervise a defendant while an appeal is pending, but fails to acknowledge the limited applicability of that principle here, where Mr. Spann is not currently on supervised release. Gov't Br. 16 (quoting *United States v. D'Amario*, 412 F.3d 253, 255 (1st Cir. 2005). The claimed period of "no . . . supervision at all" that the First Circuit feared in *D'Amario* is not present here. 412 F.3d at 255.

Even if the September 23rd hearing properly could be labeled a modification hearing, which Spann does not concede, the timing of that hearing should strongly caution this Court *against* allowing such modification. As the Seventh Circuit has recognized, modifying

conditions of supervision "at the very beginning of imprisonment may make the process of full resentencing important" because "there may be a relation between the conditions of supervised release, or among the conditions themselves, that is best assessed by reconsidering the sentence as a package." *United States v. Ray*, 831 F.3d 431, 438–39 (7th Cir. 2016). Indeed, "if a district judge modifies a handful of contested conditions while the sentence is on appeal, it is not possible either to adjust the relation among conditions or to change the balance between time in prison . . . and time subject to supervision." *Id.* at 438–39. Common sense, not to mention the interests of justice, easily cuts in favor of finding that the district court lacked jurisdiction to "modify" Mr. Spann's sentence on September 23rd.

## II.     The District Court Abused Its Discretion By Delegating to the Probation Officer the Decision of Whether to Impose Inpatient Treatment as a Condition of Supervised Release.

The district court's decision to allow the Probation Office to determine whether Mr. Spann would be required to enter into inpatient or outpatient mental health treatment was an abuse of discretion. The government agrees that "a court must decide whether to impose a condition, but a court may delegate to the probation officer the details of

how to implement the ordered condition." Gov't Br. 23. Because this is a case squarely involving the former category, the government cannot claim—and indeed, does not claim—that it prevails under an abuse of discretion standard.

### A. The Mental Health Supervision Condition Impermissibly Leaves It to the Probation Office to Determine Whether Mr. Spann Will Be Subject to Inpatient Treatment.

Mr. Spann agrees with the government that the Probation Office may decide details of *how* to implement a condition of supervision. But Mr. Spann disagrees as to the types of details this authority includes. "How" certainly includes details such as "where and when the condition will be satisfied," *United States v. Stephens*, 424 F.3d 876, 880 (9th Cir. 2005), and which days and times a defendant would attend treatment, as well as the specific facility or location for treatment or other "ministerial acts or support services related to the punishment imposed," *United States v. Mike*, 632 F.3d 686, 695 (10th. Cir. 2011); *see also United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (permitting delegation of "selection of a therapy provider and schedule to the probation officer" but not decision to impose treatment). But "how" does *not* include *whether* to impose inpatient treatment. That is because the nature of inpatient

treatment is so severely restrictive that the decision to impose it goes beyond "ministerial" duties and support services and is tantamount to "allow[ing] the officer to decide the nature or extent of the defendant's punishment." *Mike*, 632 F.3d at 695.

A defendant in inpatient treatment endures a "loss of liberty" not unlike what he endured in prison: he must live in the facility "24 hours each day for several months," is prevented from seeing family or friends, and is forbidden from holding a job and living and engaging in his community. *Id.*; *see also United States v. Nishida*, 53 F.4th 1144, 1151 (9th Cir. 2022) ("confinement to a mental health facility is far more restrictive than having to attend therapy sessions, even daily."); *Martinez*, 987 F.3d at 435 ("Inpatient treatment differs from outpatient treatment because the patient cannot leave . . . ."). The government claims to not understand why inpatient treatment is categorically different from other losses of liberty and claims that intensive outpatient treatment could be similarly onerous. Gov't Br. 35. But "[c]onditions that touch on significant liberty interests are qualitatively different from those that do not," and inpatient treatment plainly implicates such

liberty interest to a greater degree than outpatient treatment. *Mike*, 632 F.3d at 636.

The government tries to rewrite the mental health supervision condition to restore the district court's control by labeling the condition as a "contingent" agreement—*i.e.*, that "the district court has decided that if the assessment recommends inpatient treatment, Spann will undergo inpatient treatment. And if the assessment recommends intensive outpatient treatment, Spann will undergo outpatient treatment." Gov't Br. 29. But this is not what the district court ordered, even if such a contingency agreement were lawful.[2] The district court said, "*if it's deemed appropriate*"—which the written judgment subsequently clarified to mean that if the Probation Office deemed

---

[2] Mr. Spann maintains that the district court cannot delegate the inpatient treatment decision to a treatment provider and rubber stamp the results. *See Nishida*, 53 F.4th at 1152 ("And if it was intended that the treatment professional would decide whether inpatient or outpatient treatment would be required, the same improper-delegation problem would exist."). The government's framing of a "contingency" condition entails the district court approving whatever the provider recommends (as the district court stated, "that's fine with me"). For the very reasons explained in this brief with respect to the Probation Office, that type of delegation to a treatment provider would be likewise unlawful. *See Stephens*, 424 F.3d at 881 ("[T]he right to . . . impose the punishment provided by law is judicial.") (citation omitted).

inpatient or outpatient treatment appropriate. That delegation, for the reasons stated *supra*, was impermissible. The district court in *United States v. Young*, 910 F.3d 665 (2d Cir. 2018), by contrast, did not specifically make *inpatient* treatment contingent on any evaluation; in fact, citing the liberty interests are referenced in *Matta*, the court expressly construed a condition requiring "mental health treatment" if "indicated by an evaluation" to "*exclude* the imposition of inpatient treatment." *Id.* at 671 (emphasis added). *Young* is therefore of no help to the government.

The government further claims that "most circuits" allow the Probation Office officers to make the inpatient treatment decision. Gov't Br. at 31. The government is incorrect. As explained *infra*, only one circuit (the Eighth Circuit) has granted the Probation Office such authority in a precedential opinion, and even that circuit has forbidden such a condition if it operates as a "hand-off" to the Probation Office. *See United States v. Kent*, 209 F.3d 1073, 1079 (8th Cir. 2000) (finding improper delegation where "it is entirely possible that [defendant's] probation officer, as opposed to the court, would retain and exercise ultimate responsibility over the situation"). No circuit has explicitly

sanctioned the district court's approach to delegate the decision of whether to impose inpatient treatment to the Probation Office and to rubber-stamp in advance whatever the Probation Office decides. And nothing in the text of the court's oral pronouncement or written conditions indicates that the court in this case would weigh in on or participate in that decision after it was made.

### B. The Government Ignores the Significant Implications of the District Court's Delegation of the Inpatient Treatment Decision to Probation.

In arguing that Mr. Spann's mental health supervision condition was non-controversial, the government largely ignores or downplays the implications of the decision on Mr. Spann's liberty and on the fairness of his sentencing process. The government claims that inpatient treatment does not "affect[] a significant liberty interest" that is categorically distinct from other supervision conditions, such as full-time outpatient therapy. Gov't Br. 35. As explained *supra*, "confinement to a mental health facility" presents liberty considerations that are "far more restrictive" than other types of treatment, as onerous as those outpatient options may be. *Nishida*, 53 F.4th at 1151 (internal quotation marks omitted).

This difference underscores why *the district court*—not the Probation Office—must impose inpatient treatment, taking into account all the statutory factors that the court is obligated to consider under 18 U.S.C. § 3553 and ensuring that there be "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d).

The Probation Office, by contrast, has no obligation to consider the Section 3553 factors and no reason to make sure the condition he chooses is narrowly tailored with respect to the deprivation of liberty. Probation has no duty to balance inpatient treatment with other conditions or with the term of imprisonment, or to objectively consider how Section 3553 interests (deterrence, protection of the public, and rehabilitation) are reflected in the supervision conditions. Mr. Spann's own situation provides a case in point of the unique considerations posed by inpatient treatment.

At his sentencing, after imposing an above-guidelines prison sentence of 12 months, the district court made its "strongest possible recommendation that BOP designate a facility with sophisticated resources for mental health treatment." App. 254. As a result, Mr. Spann

is presently serving a 12-month sentence at Butner FCI, where he is receiving regular and intensive mental health treatment. "Immediately upon [his] release" at the end of June, Mr. Spann will commence a 30-day mental health assessment in an inpatient setting. App. 254. He will then potentially enter up to 23 additional months of inpatient treatment, if the Probation Office so decides. The Probation Office therefore has the authority to take what was a 3 to 9 month guideline sentence, App. 95, 242, and turn it into three *years* of being confined in a facility—without any requirement that the district court assess whether the Section 3553 factors are met and whether inpatient treatment is the least restrictive way to achieve rehabilitation and deterrence in light of the significant inpatient treatment Mr. Spann has already undertaken.

Finally, the government argues that the district court "need not decide" whether to impose inpatient treatment "at the outset," as doing so would make little sense before the 30-day assessment anyway. Gov't Br. 31, 37. Mr. Spann agrees. It would make most sense for the district court to decide whether such treatment makes sense after Mr. Spann completes his in-prison treatment and his 30-day assessment. It does not follow, however, that the Probation Office should assume this

responsibility. Supervised release in general requires some element of ex ante prediction, as conditions of release are crafted months and years before they are actually implemented. *See United States v. Thompson*, 777 F.3d 368, 374 (7th Cir. 2015) ("[B]ecause conditions of supervised release, though imposed at sentencing, do not become operational until the defendant is released, the judge has to guess at the time of sentencing what conditions are likely to make sense in what may be the distant future."). But the calculus behind supervised release remains statutorily imposed, as explained *supra*. Nothing in the peculiar nature of supervised release means shifting judicial duties to non-judicial figures.

Inpatient treatment, like any other condition of supervised release, must be "imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Matta*, 777 F.3d at 123. This means that the district court should make clear that after Mr. Spann's 30-day assessment, the court itself will make the decision, based on the appropriate sentencing factors and in light of Mr. Spann's progress receiving 12 months of treatment at Butner. *See Thompson*, 777 F.3d at 374 ("Conditions that may seem sensible at

sentencing may not be sensible . . . when the defendant is finally released from prison.").

## II. Even Under a Plain Error Standard, the District Court's Delegation to the Probation Officer Was Impermissible.

Even if this Court were to read the oral pronouncement of the mental health condition to be so clear that Mr. Spann was on notice of the delegation issue and failed to object, Mr. Spann has shown plain error. Under the plain error standard, Mr. Spann "must show that the error occurred, that it was 'plain,' and that it affected his substantial rights." *In re Sealed Case*, 573 F.3d 844, 847–48 (D.C. Cir. 2009) (internal quotation marks and citations omitted). If these three elements are met, the Court will reverse if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*

To start, the delegation error here was "plain." There is no plausible reading of the condition that avoids a delegation in violation of an "absolutely clear" legal norm. *Id.* at 851. The district court's condition had the Probation Office deciding whether Mr. Spann would be subjected to inpatient treatment during supervision, a decision that must be made by a judicial officer. *Stephens*, 424 F.3d at 881; *Ex parte U.S.*, 242 U.S. 27, 41 (1916) ("Indisputably under our constitutional system the right to

. . . impose the punishment provided by law, is judicial . . . .").  Courts have found plain error with much less straightforward delegations. *See, e.g.*, *Nishida*, 53 F.4th at 1152 (delegation that "direct[ed] the probation officer, after consulting with the provider, to supervise [defendant's] treatment, including the 'provider, location, modality, duration, and intensity,'" without reference to inpatient treatment, was plain error).

The government, citing *United States v. Accardi*, 669 F.3d 340 (D.C. Cir. 2012), claims that there is a "circuit split" on the issue of whether the Probation Office may decide whether to impose inpatient treatment. But the "split" *Accardi* cited was not on this precise issue. To the contrary, several of the cases cited by *Accardi* dealt with the authority to decide the undefined "details" of such treatment, not inpatient treatment specifically. *See id.* (citing, e.g., *United States v. Heckman*, 592 F.3d 400, 411 (3d Cir. 2010) (treatment condition permissible where "only the details are to be set by the Probation Office"); *United States v. Allen*, 312 F.3d 512, 515–16 (1st Cir. 2002) (treatment condition permissible where court was "delegating the administrative details to the probation officer"). Among the cases the government finds favorable in its alleged "circuit split," only the Eighth Circuit has held in a precedential opinion

that a court may have the Probation Office decide whether to require inpatient treatment, but the court was careful to cabin that discretion by requiring that the district court did not disclaim "ultimate responsibility" over such a decision. *United States v. Poitra*, 648 F.3d 884, 888–89 (8th Cir. 2011). Indeed, the Eighth Circuit's reasoning was based on "an assumption that . . . it is likely that the probation officer will consult with the court about the matter or, at a minimum, the court will entertain a motion from the defendant for reconsideration of the probation officer's initial decision." *United States v. Wynn*, 553 F.3d 1114, 1120 (8th Cir. 2009). And the Eighth Circuit itself found in a separate opinion that delegation was *improper* where "it [was] entirely possible that [defendant's] probation officer, as opposed to the court, would retain and exercise ultimate responsibility over the [deciding the type of treatment to impose]." *Kent*, 209 F.3d at 1079.

The other two decisions the government cites on its side of the "circuit split" proposition are non-precedential opinions with little to no reasoning. *United States v. Cutler*, 259 F. App'x 883 (7th Cir. 2008) (unpublished), allowed the Probation Office to choose between inpatient and outpatient settings because treatment carried no risk of "return[ing]

the probationer to prison." *Id.* at 887. No other court has endorsed *Cutler*'s peculiar reasoning, and indeed several courts have made clear that violating inpatient treatment (like violating other conditions of supervised release) would return offender to prison. *See Nishida*, 53 F.4th at 1152–53 (noting defendant "must comply" with inpatient treatment condition "or face revocation of her supervised release"); *United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005) (noting that in case of noncompliance with inpatient treatment condition, "a defendant who fails to meet that condition will be subject to further incarceration").

The government's other case, *United States v. Calnan*, 194 F. App'x 868 (11th Cir. 2006) (unpublished), ruled in one sentence that deciding the type of treatment to impose was a "ministerial function" that simply dealt with "how, when, and where" the drug treatment would take place. 194 F. App'x, at 870–71. The court offered no other reasoning on the subject.

Meanwhile, the four circuits that the government claims make up the remainder of the "majority" each allow delegations concerning the "details" of treatment, but never consider if the Probation Office can decide whether to impose inpatient treatment specifically. Gov't Br. 25–

26; *see United States v. Allen*, 312 F.3d 512 (1st Cir. 2002); *United States v. Heckman*, 592 F.3d 400 (3d Cir. 2010); *United States v. Byrd*, 808 F. App'x 161 (4th Cir. 2020); *United States v. Carpenter*, 702 F.3d 882 (6th Cir. 2012). These cases cannot form a "circuit split" on the inpatient treatment delegation issue when they never weigh in on that issue. Moreover, in principle, Mr. Spann agrees with these cases that the Probation Office can decide "administrative" details such as when and where treatment is implemented, while only the court may decide whether treatment should be required as a condition of release. *Allen*, 312 F.3d at 516. (allowing court to "merely direct[] the probation officer to perform ministerial support services [while] not giving the officer the power to determine whether [defendant] had to attend psychiatric counseling."). As explained *supra*, Spann disagrees specifically that *inpatient treatment* constitutes such an administrative "detail." Thus, a closer examination of the cases involved in the government's "circuit split" undermines the government's contention that "the majority of circuits are correct that the inpatient/outpatient decision may be delegated to a probation officer." Gov't Br. 12–13.

The district court's delegation decision, beyond being "plain," also affected Mr. Spann's substantial rights. "A sentencing error affects substantial rights when there is a reasonable likelihood it impacted the sentence." *United States v. Burroughs*, 613 F.3d 233, 245 (D.C. Cir. 2010).

First, as discussed *supra*, inpatient treatment necessarily restricts Mr. Spann's liberty, thereby clearly affecting his substantial rights.

Second, any condition of supervised release must be "the least restrictive alternative"—that is, the court "must not only find the condition to be reasonably related to Congress's goals as related to the defendant but must weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes." *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013). By allowing the Probation Office to decide between inpatient and outpatient treatment, the district court would not decide itself which was least restrictive alternative based on Mr. Spann's circumstances. Such an error would likewise affect Spann's substantial rights.

Third, there is a reasonable likelihood that if the district court were required to decide whether Mr. Spann's liberty should be restricted by an inpatient treatment condition, that it would weigh the sentence of

imprisonment already imposed against that restraint in a way Probation could not and would not be authorized to do. This consideration therefore also would impact Mr. Spann's substantial rights.

Fourth, it is well-established that Mr. Spann "must comply with the conditions or face revocation of her supervised release." *Nishida*, 53 F.4th at 1152–53; *see* 18 U.S.C. § 3583(e)(3), Fed. R. Crim. P. 32.1. "A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration." *Pruden*, 398 F.3d at 251.

Given the obvious nature of the district court's delegation to the Probation Office and these implications of that delegation, it is thus "reasonably likely that the court will reconsider its previous decision" and hold that the court itself will evaluate the results of the 30-day assessment as well as applicable statutory factors to decide whether Spann should be required to proceed with inpatient treatment as a condition of supervision. *United States v. Burroughs*, 613 F.3d 233, 245 (D.C. Cir. 2010) (finding defendant's substantial rights would be affected by improper condition of supervised release).

Finally, in the broadest and simplest terms, Mr. Spann had a right to have an Article III judge decide his sentence, and the delegation to the Probation Office to decide a condition of his sentence was an unconstitutional error "seriously affecting the fairness, integrity or public reputation of judicial proceedings." *In re Sealed Case*, 573 F.3d at 852; *Pruden*, 398 F.3d at 251 ("[I]mposing a sentence not authorized by law seriously affects the fairness, integrity, and reputation of the proceedings.") (internal quotation marks and citations omitted); *see also United States v. Head*, 817 F.3d 354, 361 (D.C. Cir. 2016) (finding serious effect on fairness of judicial proceeding "because, as a practical matter, the district court's error may have extended [defendant's] incarceration by nearly three years."); *United States v. Cooper*, 886 F.3d 146, 158 (D.C. Cir. 2018) ("[I]t is a miscarriage of justice to give a person an illegal sentence."). The delegation allowing the Probation Office to decide whether Mr. Spann should be required to enter inpatient treatment as a condition of his supervised release therefore constitutes plain error.

## CONCLUSION

For the foregoing reasons, Mr. Spann respectfully requests that this Court vacate his 36-month term of supervised release as well as the

mental health condition as presently constructed. This Court should remand this matter to the district court with instructions that Mr. Spann's term of supervised release shall not exceed 24 months, and that inpatient treatment may only be imposed by the district court and may not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of supervised release.

Respectfully submitted,

A. J. Kramer
Federal Public Defender

_____/s/_____
Isra Javed Bhatty
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500
isra_bhatty@fd.org

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Appellant's Reply Brief was prepared in Century Schoolhouse 14-point font pursuant to Fed. R. App. P. 27(d)(2) and contains 5,309 words.

_____/s/_____
Isra Bhatty
Assistant Federal Public Defender